**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| INMAR BRAND SOLUTIONS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No.: _____ |
| | ) |
| BIRDZI INC., | ) |
| | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Inmar Brand Solutions, Inc. ("Inmar" or "Plaintiff"), through its attorneys, for its Complaint against Birdzi Inc. ("Birdzi" or "Defendant"), alleges as follows:

**THE PARTIES**

1.      Plaintiff Inmar is a corporation organized and existing under the laws of the State of North Carolina having a principal place of business at 1 W. 4th Street, Suite 500, Winston-Salem, North Carolina 27101.

2.      Defendant Birdzi is a corporation organized and existing under the laws of Delaware. Birdzi's website lists a virtual office working space as its business address: located at 991 US 22, Suite 200, Bridgewater, New Jersey 08807.

**JURISDICTION AND VENUE**

3.      This action arises under the patent laws of the United States, Title 35 of the United States Code. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1338(a).

-1-

4.      Defendant Birdzi is subject to this Court's specific and general personal jurisdiction consistent with due process and the Delaware Long Arm Statute, 10 Del. C. § 3104.

5.      Defendant Birdzi Inc. has appointed The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801, as its registered agent in Delaware.

6.      Defendant Birdzi is subject to the Court's personal jurisdiction, in part, because it regularly conducts and solicits business, or otherwise engages in other persistent courses of conduct in this district, and/or derives substantial revenue from the sale and distribution of infringing goods and services provided to individuals and businesses in this district.

7.      This Court has personal jurisdiction over Defendant Birdzi because, *inter alia*, Defendant (1) has substantial, continuous, and systematic contacts with this State and this judicial district; (2) enjoys income from its operations and sales in this State and this judicial district; and (3) solicits business and market products, systems and/or services in this State and judicial district including, without limitation, those related to the infringing accused products.

8.      For example, Birdzi, either directly, or indirectly through its digital promotions network and platforms, has transacted and/or continues to transact business in Delaware, and has regularly solicited and continues to regularly solicit business in Delaware. Birdzi has also engaged in substantial activity within the District and derives revenue from goods or services provided to retailers, advertisers, manufacturers, and individuals in Delaware. For example, Birdzi is a grocery retail technology company that provides coupon technology to grocery retailers, including in the State of Delaware, through platforms integrated with Delaware retailers' point-of-sale systems; Birdzi's digital platform provides customer analytics, real-time shopper engagement, and personalizes coupon offers, connecting retailers, manufacturers, and shoppers through a shared network throughout the United States, including in the State of Delaware; and Birdzi delivers promotions for thousands of

grocery stores through digital retailer platforms throughout the United States, including in the State of Delaware.

9. Birdzi's business also depends on its ability to maintain and scale the network infrastructure necessary to operate its platforms, including websites and mobile applications, which are accessible by and targeted to consumer and business clients in the State of Delaware and in this Judicial District.

10. Birdzi also owns and operates online sites and applications, including goHarvestMarket, 10 Box Cost-Plus, and my Hometown Rewards, which integrate infringing functionalities and systems, and which offer for sale, and sell, infringing Birdzi products and services to customers within this Judicial District.

11. Venue in this Judicial District is proper under 28 U.S.C. § 1400(b) because Defendant has committed acts of infringement in Delaware and Defendant Birdzi is incorporated in Delaware.

## FACTUAL ALLEGATIONS

### About Inmar

12. At Inmar's predecessor company's inception in 1980, the coupon industry largely relied on manual processing and its founder had a novel idea that would ultimately revolutionize coupon processing—leveraging technology to bring speed, automation and accuracy to the complicated process of managing coupons, making it easier for retailers to get paid, brands to track effectiveness, and consumers to save money.

13. Inmar and its affiliates have continued to leverage technology to create client-focused solutions for promotion, supply chain, and health care, including developing their own innovations to improve efficiencies, minimize fraud, and elevate the overall consumer experience. Inmar has applied for and received patents in the United States that describe aspects of Inmar's innovations.

14.    Additionally, Inmar licenses technology to improve the products and services it provides to consumers and businesses alike. For example, Inmar is the exclusive licensee of automated, end-to-end coupon and promotion processing technology developed by Intelligent Clearing Network, Inc. ("ICN"), including the patent-protected technologies of the Patents-in-Suit, which are described further below.

15.    The ICN inventions contained in the Patents-in-Suit relate to groundbreaking improvements to coupon processing efficiency, speed, and security.  The techniques ICN developed are described in the Patents-in-Suit and relate to coupon processing networks and have particular application in the coupon validation, redemption, and financial settlement industries, digital promotions environments, and coupon data and analytics services, as will be further described below.

**The Patents-in-Suit**

16.    Plaintiff is the exclusive licensee of all rights and interest in United States Patent Nos. 10,846,729 ("the '729 Patent"), 9,070,133 ("the '133 Patent"), and 9,098,855 ("the '855 Patent") (collectively the "Patents-in-Suit"); including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the Patents-in-Suit. Accordingly, Plaintiff possesses the exclusive right and standing to prosecute the present action for infringement of the Patents-in-Suit by Defendant.

**U.S. Patent No. 10,846,729**

17.    On November 24, 2020, the U.S. Patent and Trademark Office duly and lawfully issued United States Patent No. 10,846,729 ("the '729 Patent"), entitled "Intelligent Clearing Network."  A true and correct copy of the '729 Patent is attached hereto as **Exhibit 1**.

18.     Inmar is the exclusive licensee of all rights and interest in and to the '729 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

19.     The '729 Patent describes, among other things, novel methods and systems that improve the process of validating, clearing and financially settling coupons, using a real-time intelligent clearing network, allowing for more efficient, less error-prone and more convenient coupon processing.

20.     These inventive technological improvements solved then-existing problems in the field of coupon processing.  For example, prior to the invention of the '729 Patent, coupon processing relied primarily on manual clearing and settlement process of paper coupons, requiring a slow, fraud-prone and labor-intensive process before the retailer was reimbursed for the value of the coupon and the cost of the paper coupon.  For example, this physical paper coupon clearing process was not only slow and manual, but also sometimes required a second independent count of each paper coupon before a retailer is reimbursed.  Another problem with the then-existing paper clearing and settlement process was the issue of disputes and charge backs by the manufacture for the value of the redeemed paper coupon to the retailer for paper coupons which the retailer redeemed, but should not have because the coupons were invalid in some way, such as coupons redeemed after an expiration date. Yet another problem was that retailers would redeem coupons that had been impermissibly copied, thereby monetizing coupons in excess of the number of coupon offers which the manufacturer had made available for redemption.  (*See* Ex. 1, 1:27-62).

21.     The '729 Patent overcomes these drawbacks and improves the functioning of coupon processing systems, for example, by describing novel and inventive systems in which coupons are validated, redeemed and financially settled using an intelligent clearing network, a point-of-sale

terminal, a point-of-sale controller, an intelligent clearing network server, an intelligent clearing network database, and an intelligent clearing network master coupon table. The '729 Patent describes novel systems in which the point-of-sale terminal is configured to transmit specific types of coupon data, such as data elements read from a GS1 barcode, directly to the intelligent clearing network server, via the intelligent clearing network server, for coupon redemption, validation, and financial settlement at the intelligent clearing network server.

22.     In one aspect, the '729 Patent describes an improved coupon processing system in which a point-of-sale terminal scans a coupon, reading GS1 data elements which include universal product code information, and those data elements are transmitted through the intelligent clearing network from the point-of-sale terminal to an intelligent clearing network server. If the intelligent clearing network validates the GS1 data elements, the server transmits coupon related information through the network to the point-of-sale terminal. (Ex. 1, at 2:23-31). The claims of the '729 Patent are directed to specific techniques and apparatus, using an intelligent clearing network, to validate, redeem and financially settle coupons in real time, providing a convenient, fast, auditable, and comprehensive financial settlement process, while eliminating potential fraud and the need for manually counting and validating each paper coupon redeemed. (Ex. 1, at 1:66-4:48; 52:34-56:22).

23.     For example, Figures 8A and 8B are schematic block diagrams illustrating one concept of the process of generating and redeeming a coupon card:



**U.S. Patent No. 9,070,133**

24.     On June 30, 2015, the U.S. Patent and Trademark Office duly and lawfully issued United States Patent No. 9,070,133 ("the '133 Patent"), entitled "Intelligent Coupon Network."  A true and correct copy of the '133 Patent is attached hereto as **Exhibit 2**.

25.     Inmar is the exclusive licensee of all rights and interest in and to the '133 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

26.     The '133 Patent describes, among other things, novel methods and systems for redeeming coupons that utilize novel ways of bundling technologies, such as real time communications and large volume data processing facilities, into a functioning operational platform. The inventions of the '133 Patent improve the efficiency, accuracy and speed of clearing coupons, while also improving the speed with which vital market intelligence from the redemption of coupons

is delivered to retailers and manufacturers, thus improving the process by which companies realize the benefits of coupon data analytics.

27.    These inventive technological improvements solved then-existing problems in the field of coupon processing.  For example, prior to the invention of the '133 Patent, coupon processing consumers spent considerable time and labor manually clipping and organizing coupons, while manufacturers and retailers would expend substantial resources to manually clear the coupons. Another problem with the then-existing coupon processing systems was that retailers and manufacturers might wait for weeks to receive critical information from a market segment or a particular promotion that may inform company strategy, provide the company with a competitive advantage and/or deliver industry insights that drive future promotions or decisions.  While market intelligence may have been contained in extended barcodes, that information was not quickly communicated to manufacturers and advertisers by then-existing technologies.  Yet another problem was that mistakes in printing of coupons could last for the duration of a promotion, which on a larger scale, could be very costly for manufacturers and/or retailers.  (*See* Ex. 2, 1:11-34; 8:62-65).

28.    The '133 Patent overcomes these drawbacks and improves the functioning of coupon processing systems, for example, by describing novel and inventive systems that allow for automatic processing of coupons, providing a linkage between a coupon card and coupon information that is stored in a centralized database, distributing information associated with coupon cards, and integrating technology for reading and transmitting such data from the retailer point-of-sale, enabling the speedy dissemination of coupon redemption data to interested advertisers and manufacturers.

29.    In one aspect, the '133 Patent describes an improved coupon processing system in which a point-of-sale terminal is communicatively coupled to an intelligent coupon network, the point-of-sale terminal is configured to read, process, format and transmit specific data from a coupon

card across the network, and a coupon processing server is configured to receive, interpret and validate the coupon data of the coupon card.  According to one aspect of the '133 Patent inventions, the coupon card can be configured to store and transmit useful data for not only one-time coupon validation or the duration of a single promotion, but also as an updateable card, which, for example, a manufacturer may update to provide additional coupon offers to a consumer.  (Ex. 2, at 1:45-52; 3:61-4:6).  For example, a coupon card may integrate coupon card memory and an antenna which facilitates the reading and transmission of data between the card and a reader employing Radio Frequency Identification ("RFID") technology or other electromagnetics technology, such as Radio Frequency Data Communication ("RFDC"), enabling real time communication and distribution of coupon data or promotions, as well as the relay of coupon redemption data.  (Ex. 2, at 5:4-43).

30.     The claims of the '133 Patent are directed to specific techniques and apparatus, using an intelligent coupon network, to automatically and conveniently process coupons and enable the receipt of real time, comprehensive market intelligence through integrated systems and communications among scanned coupon cards, a centralized database and an intelligent coupon network server.  (Ex. 2, at 1:38-2:14; 11:57-16:57).

31.     For example, Figure 1 is a schematic block diagram illustrating one concept of the system for redeeming coupons:



**FIG.1**

**U.S. Patent No. 9,098,855**

32.      On August 4, 2015, the U.S. Patent and Trademark Office duly and lawfully issued United States Patent No. 9,098,855 ("the '855 Patent"), entitled "Intelligent Clearing Network." A true and correct copy of the '855 Patent is attached hereto as **Exhibit 3**.

33.      Inmar is the exclusive licensee of all rights and interest in and to the '855 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

34.      The '855 Patent describes, among other things, novel methods and systems for the distribution and electronic processing of coupons and/or incentives, and in particular, an intelligent clearing network based system and method for validating and redeeming coupons, promotions and

incentives, allowing for more efficient, less error-prone and more convenient coupon processing, and making comprehensive marketing intelligence quickly available to advertisers and manufacturers upon coupon redemption, thus improving the process by which companies realize the benefits of coupon or promotion data analytics.

35.    These inventive technological improvements solved then-existing problems in the fields of coupon processing.  For example, prior to the invention of the '855 Patent, coupon processing consumers spent considerable time and labor manually clipping and organizing coupons, while manufacturers and retailers would expend substantial resources to manually clear the coupons. Another problem with the then-existing coupon processing systems was that manufacturers and advertisers might wait for weeks to receive critical information from a market segment or a particular promotion that may inform company strategy, provide the company with a competitive advantage, and/or deliver industry insights that drive future promotions or decisions.  While market intelligence may have been contained in extended barcodes, that information was not quickly communicated to manufacturers and advertisers by then-existing technologies.  Yet another problem was that mistakes in printing of coupons could last for the duration of a promotion, which on a larger scale, could be very costly for manufacturers and/or retailers.  (*See* Ex. 3, 1:11-34; 8:62-65).

36.    The '855 Patent overcomes these drawbacks and improves the functioning of coupon processing systems, for example, by describing novel and inventive systems in which coupons are validated, redeemed and financially settled using an intelligent clearing network, a point-of-sale terminal, a point-of-sale controller, and an intelligent clearing network server.  One aspect of the invention describes the transmission of coupon and/or incentive related information from the point-of-sale terminal to the point-of-sale controller for coupon redemption and validation through the network at the intelligent clearing network server.  In one aspect of the invention, the coupon and/or

incentive related information includes universal product codes contained in a transaction, wherein these data are used by the intelligent clearing network server to validate the coupon or incentive related information, and communicate that validation through the network to the terminal. (Ex. 3, at 1:50-2:3).

37.    In one aspect, the '855 Patent describes an improved coupon processing system in which trigger and target universal product codes are transmitted over an intelligent clearing network to automatically validate or reject a coupon or incentive, and further used to communicate the attempt or success of a coupon redemption to a manufacturer. For example, a manufacturer may have an in-store or online or mobile device promotion, which displays or advertises products on promotion or at a discounted price. The promotional information may come from a manufacturer which sets up sale or discounted price information and interacts with the invention's intelligent clearing network promotion manager, such as a web application, to store this promotion information in the intelligent clearing network database. When the consumer checks out at a retailer's point-of-sale terminal, the consumer's products with universal product codes are scanned or entered at the point-of-sale terminal. The point-of-sale terminal may format a promotion request message and send the universal product codes of scanned (or manually inputted) products to the intelligent clearing network promotion redemption real time service, which can be running on the intelligent clearing network server. The intelligent clearing network promotion redemption service can then compare the universal product codes sent in the promotion request message to all active promotions defined by the manufacturer on the intelligent clearing network database. If there is any active promotion where the universal product codes contained within the promotion request message satisfy the requirements of that promotion, the intelligent clearing network promotion redemption service can format a promotion request response message that includes the target universal product code number of the product the

manufacturer coupon should be applied to, and send that response back to the intelligent clearing network bridge software installed on the retailer's point-of-sale terminal. The retailer's point-of-sale terminal can then attempt to redeem the manufacturer coupon against the target universal product code contained in the promotion request message. The intelligent clearing network software can then generate a confirmation message regarding the success of the coupon redemption process. That redemption confirmation message can be further transmitted to the intelligent clearing network server, enabling the manufacturer to obtain the benefits of coupon redemption data, for example competitive intelligence or promotion success, in a fast, efficient manner. (Ex. 3, at 17:38-18:28).

38.    The claims of the '855 Patent are directed to specific techniques and apparatus, using an intelligent coupon network, to automatically and conveniently process coupons and enable the receipt of real time, comprehensive market intelligence through integrated systems, including, for example, communications among a point-of-sale terminal controller, a centralized database and an intelligent coupon network server, using universal product codes contained in a point-of-sale transaction. (Ex. 3, at 3:61-4:16; 28:37-34:37).

39.    For example, Figure 10 is a schematic block diagram illustrating one concept of the process of automatically redeeming a coupon or incentive related information using trigger and target universal product codes over a network, and transmitting a confirmation thereof back to the manufacturer:



**FIG.10**

### Birdzi's Infringing Technologies

40.    As described further below, Birdzi employs, offers to sell, and/or sells at least the following products and services that infringe the Patents-in-Suit, namely Birdzi's promotion systems and platforms such as Birdzi's Customer Intelligence Platform, Customer Data Platform, Digital Coupon Platform, VISPER 1.0, VISPER 2.0, Shopper Analytics, DataScope, Shopper Engagement Tools, Offer Performance Analytics, Product Catalog Management, Customer Support, POS integrations with retail point-of-sale system providers such as ECRS and LOC, and applications such as More Rewards, Niemanns, My Country Market, Personalized Wellness, goHarvestMarket, 10Box Cost-Plus, and my Hometown Rewards (collectively, the "Accused Products").

41.    Inmar has complied with 35 U.S.C. § 287.  For example, since at least May 9, 2025, Birdzi has had actual notice of the Patents-in-Suit, and actual notice that Birdzi products and services

embody and/or perform the inventions of the Patents-in-Suit.  On May 9, 2025, counsel for Inmar, sent a notice letter to Shekar Raman, the Chief Executive Officer of Birdzi, via email and Federal Express (the "Notice Letter"), which documented Birdzi's infringement of the Patents-in-Suit.  The Notice Letter informed Birdzi that Birdzi's products and services infringed claims of the Patents-in-Suit.  On June 20, 2025, Mr. Raman confirmed receipt of the Notice Letter.

42.     Inmar has made efforts to negotiate a resolution, but as described herein, Birdzi has continued to infringe even after being notified of its infringement, and its only defenses set forth have relied on vague and unsupported allegations of invalidity and non-infringement positions that rely on claim construction positions that are inconsistent with those adopted by this Court.

**FIRST COUNT**
**DIRECT AND INDIRECT INFRINGEMENT OF U.S. PATENT NO. 9,070,133 UNDER**
**35 U.S.C. § 271(a), (b) and (c)**

43.      Inmar incorporates by reference all of the prior allegations set forth in this Complaint as though fully set forth herein.

44.     Birdzi has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '133 patent (including without limitation claim 1) in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling, in this District and elsewhere in the United States, the Accused Products.  The Accused Products infringe at least claim 1 of the '133 patent.  For example, Birdzi's "Customer Engagement Platform" uses and includes a computer-readable medium storing instructions executable by a processor to perform operations for processing coupons across a network.  *See* Birdzi Shopper Engagement Tools, *available at* https://birdzi.com/platform/shopper-engagement-tools/.  This platform "…enables the delivery of a seamless omnichannel shopping experience. Whether it's personalized product recommendations via email or real-time, in-store mobile notifications featuring tailored offers, Birdzi ensures your customers stay engaged throughout their entire shopping journeys." *Id.*  In addition,

-15-

Birdzi integration with NCR's loyalty system uses and includes a computer-readable medium storing instructions executable by a processor to perform operations for processing coupons across a network, so that, for example, "retailers can publish an unlimited number of personalized offers..." *See* Birdzi Blog, Birdzi Integrates with NCR's Loyalty System to Improve Grocers' Personalization Efforts, *available at* https://birdzi.com/birdzi-integrates-with-ncrs-loyalty-system-to-improve-grocers-personalization-efforts/.

45.    The Accused Products include a processor that is configured to receive "at a coupon processing server, a unique account identifier from a first point of sale terminal via a network, where the coupon processing server is configured to communicate with a plurality of point of sale terminals, where the unique account identifier was scanned at the first point-of-sale terminal which is located at a retail store[.]" *See* '133 Patent, Claim 1, at 11:60-66.  For example, the unique account identifier may be scanned on the users' phone at a retail store at a point of sale terminal via a network in a retail store, following the steps described below:

46.    Birdzi users can type or scan any item they want to purchase in the Birdzi app to add it to their shopping list.



*See, e.g.,* Welcome To My CountyMarket's Mobile Application Support Page, *available at* https://birdzi.com/mycountymarket_appsupport/.

47.     Birdzi's recommended coupons appear on the screen or the coupons tab where users can "clip" the coupons.



*See e.g.,* Welcome To My CountyMarket's Mobile Application Support Page, *available at* https://birdzi.com/mycountymarket_appsupport/.

48.     Clipping the coupons adds them to the coupon list:

To take advantage of savings simply clip the coupon and it will be added to your list.



*See e.g.,* Welcome To My CountyMarket's Mobile Application Support Page, *available at* https://birdzi.com/mycountymarket_appsupport/.

49.    Clipped coupons can be viewed in the "clipped coupons" tab:

To see your clipped coupons, click on the shopping list icon and go to the "clipped coupons" tab.




*See e.g.,* Welcome To My CountyMarket's Mobile Application Support Page, *available at* https://birdzi.com/mycountymarket_appsupport/.

50.    Coupons are redeemed by scanning the barcode on the home screen:

Redeem coupons at checkout by scanning the
barcode on your home screen.



*See e.g.,* Welcome To My CountyMarket's Mobile Application Support Page, *available at* https://birdzi.com/mycountymarket_appsupport/.

51.    Birdzi develops several mobile apps that operate similarly to the exemplary app described above.

52.    After scanning, Birdzi receives at its coupon processing server "shopper and basket information" from a point-of-sale (POS) terminal via a network. *See* Birdzi Blog, Harps Food Stores' Shoppers To Benefit From Real-Time Savings at Checkout With Birdzi and ECRS, *available at* https://birdzi.com/harps-food-stores-shoppers-to-benefit-from-real-time-savings-at-checkout-with-birdzi-and-ecrs/.  Birdzi's platform includes "an API integration with ECRS, an industry-leading provider of innovative and modern retail point-of-sale (POS) solutions, alongside their joint customers Harps Food Stores. Grocers that utilize Birdzi's and ECRS' collaborative integration, such as Harps, can now enable their customers to redeem digital coupons, loyalty rewards and Birdzi's hyper-personalized VISPER offers in real time as they shop." *Id.*  As a further example, users "can redeem their personalized digital coupons and loyalty offers seamlessly at checkout and see their purchases and club balances reflected in their digital wallets in real time." *Id.*

53.     Accused Products include a "coupon processing server that is configured to communicate with a plurality of point of sale terminals[.]"  *See* '133 Patent, Claim 1, at 11:60-67. Birdzi's coupon processing server is configured to communicate with a plurality of point-of sale (POS) terminals, as demonstrated by Birdzi's POS terminal integration partners that Birdzi uses "to deliver scalable, efficient, and tailored solutions for the retail landscape." *See* Partners & Integrations, *available at* https://birdzi.com/company/partners-integrations/.    Birdzi identifies some of its integration partners as the following:



*See id.*   Birdzi's POS terminal integration is also used to "publish an unlimited number of personalized offers with the savings delivered into the transaction at the point of sale via a real time call to Birdzi's platform, which is triggered by the customer loyalty ID."  *See* Birdzi Blog, Birdzi Integrates with NCR's Loyalty System to Improve Grocers' Personalization Efforts, *available at* https://birdzi.com/birdzi-integrates-with-ncrs-loyalty-system-to-improve-grocers-personalization-efforts/.

54.     To validate coupons and promotions, Birdzi uses a unique account identifier.  The unique account identifier is generated when customers sign up for an account and loyalty ID.

Open the app and click register you will be taken to this screen. If you do not have a Max Card Number, one will be assigned to you at the end of the registration.



*See* Welcome To My CountyMarket's Mobile Application Support Page, *available at* https://birdzi.com/mycountymarket_appsupport/; *see also* The Birdzi Hometown Rewards app, *available at* https://apps.apple.com/us/app/my-hometown-rewards/id1497432416 and https://play.google.com/store/apps/details?id=com.birdzi.harpsfood&hl=en_US&gl=US&pli=1.

Birdzi app users are not able to clip or redeem coupons until they complete registration, as shown below.

**MY HOMETOWN REWARDS MOBILE APP**

**Why join My Hometown Rewards?**

Clip digital coupons, browse our weekly ad, shop specials, and make digital shopping lists that make your in-store experience easier! You won't be able to clip or redeem coupons until you've completed registration.

**REGISTRATION**

**Why do I need to register on the My Hometown Rewards app?**

Registration is needed to activate your My Hometown Rewards membership and allow you to redeem your collected rewards. If you do not register, you will not be able to participate in certain discounts or receive other benefits.

**Can I choose NOT to include my email address on the My Hometown Rewards app?**

An email is required to make you eligible for all the features of the program. Without the necessary information, you will only be able to view normal product discounts. New members will not be able to collect discounts or redeem discounts until the required information is provided.

**What are you doing with my information?**

Customers benefit and receive value from personalization and offers. In order to provide this service, we must collect some level of information. Your personal information will never be sold to an outside company.

*See* Welcome To My Hometown Rewards Mobile Application Support Page, *available at* https://birdzi.com/birdzi-my-hometown-rewards-app-support-v3/.

     55.     The Accused Products include "the unique account identifier [] scanned at the first point-of-sale terminal which is located at a retail store and where the coupon processing server is at a location that is remote from the retail store[.]" *See* '133 Patent, Claim 1, at 11:64-67.  For example, as described above, Birdzi app users receive a unique account identifier they sign up for an account and loyalty ID.  Birdzi users clip digital coupons and check out at a point-of-sale terminal using a barcode on their phone, as shown below:



See Welcome To My CountyMarket's Mobile Application Support Page, *available at* https://birdzi.com/mycountymarket_appsupport/.

     56.     For example, Birdzi's integration with ECRS allows Birdzi to "enable their customers to redeem digital coupons, loyalty rewards and Birdzi's hyper-personalized VISPER offers in real time as they shop."  *See* Birdzi Blog, Harps Food Stores' Shoppers To Benefit From Real-Time Savings at Checkout With Birdzi and ECRS, *available at* https://birdzi.com/harps-food-stores-shoppers-to-benefit-from-real-time-savings-at-checkout-with-birdzi-and-ecrs/.  Further,

Birdzi's VISPER 2.0 solution allows "shopper and basket information" using "ECRS's point-of-sale software, CATAPULT® Retail POS, [to be] relayed directly into Birdzi's Customer Intelligence Platform in real time, allowing for immediate and seamless execution of a shopper's personalized discounts and promotional offers at the POS." *Id.* In addition, Birdzi hosts retailer-branded mobile applications and websites to deliver real-time coupon offers to specific customers who have signed up for an account and loyalty ID. *See* Birdzi Harvest Market App Terms of Use, *available at* https://cdn.birdzi.com/HTML/termsofservice/005546.html. After registration, a Birdzi app user can open the app and clip digital coupons. At checkout, Birdzi couponing services are used to look up the user and the coupons clipped and give instant discounts redeeming the coupons directly at the POS. *See* my Hometown Rewards, *available at* https://www.myhometownrewards.com/.

57.    As described above, registration of user identification information and user loyalty ID is required to receive and redeem coupon offers. After linking a loyalty account to a Birdzi app, Birdzi can analyze customer purchase data and automatically identify and deliver personalized coupon offers associated with that customer's account. *See* Birdzi Privacy Policy and App Terms of Use, *available at* https://birdzi.com/birdzi-privacy-policy-and-app-terms-of-use/; Birdzi Blog, Harps Food Stores' Shoppers To Benefit From Real-Time Savings at Checkout With Birdzi and ECRS, *available at* https://birdzi.com/harps-food-stores-shoppers-to-benefit-from-real-time-savings-at-checkout-with-birdzi-and-ecrs/. For example, creation of personalized offers "delivered into the transaction at the point of sale via a real time to Birdzi's platform [is] triggered by the customer loyalty ID." *See* Birdzi Blog, Birdzi Integrates with NCR's Loyalty System to Improve Grocers' Personalization Efforts, *available at* http://birdzi.com/birdzi-integrates-with-ncrs-loyalty-system-to-improve-grocers-personalization-efforts/.

58.    The Accused Products include a coupon processing server "at a location that is remote from the retail store[.]"  *See* '133 Patent, Claim 1, at 11:66-67.  For example, Birdzi's website states, "Our servers and data centers are located in the United States….[W]e may transfer your data from the U.S. to other countries or regions in connection with storage and processing of data, fulfilling your requests, and operating the Services," indicating the servers are operated by Birdzi and not on-site at the retailer.  *See* Birdzi Privacy Policy and App Terms of Use, *available at* https://birdzi.com/birdzi-privacy-policy-and-app-terms-of-use/.  Further, Birdzi states that the personalized offers are delivered at the point of sale "via a real time call to Birdzi's platform," further indicating that the server is remote from the retail store.  *See* Birdzi Blog, Birdzi Integrates with NCR's Loyalty System to Improve Grocers' Personalization Efforts, *available at* http://birdzi.com/birdzi-integrates-with-ncrs-loyalty-system-to-improve-grocers-personalization-efforts/.

59.    The Accused Products include "in response to receiving the unique account identifier, determining whether at least one valid coupon is associated with the unique account identifier in a database of accounts[.]"  *See* '133 Patent, Claim 1, at 12:1-4.  For example, in response to receiving the unique account identifier (such as loyalty card number), Birdzi determines whether coupons can be redeemed directly at the POS.  Birdzi uses a unique account identifier to validate coupons and promotions.  *See* my Hometown Rewards, *available at* https://www.myhometownrewards.com/; Birdzi Blog, Birdzi Integrates with NCR's Loyalty System to Improve Grocers' Personalization Efforts, *available at* http://birdzi.com/birdzi-integrates-with-ncrs-loyalty-system-to-improve-grocers-personalization-efforts/.  Further, Birdzi's VISPER 2.0 allows "shopper and basket information from ECRS's point-of-sale software, CATAPULT® Retail POS, [to be] relayed directly into Birdzi's Customer Intelligence Platform in

real time, allowing for immediate and seamless execution of a shopper's personalized discounts and promotional offers at the POS." *See* Birdzi Blog, Harps Food Stores' Shoppers To Benefit From Real-Time Savings at Checkout With Birdzi and ECRS, *available at* https://birdzi.com/harps-food-stores-shoppers-to-benefit-from-real-time-savings-at-checkout-with-birdzi-and-ecrs/; Personalization, *available at* https://birdzi.com/platform/personalization/.  In this way, shoppers can "redeem their personalized digital coupons and loyalty offers seamlessly at checkout…" *Id.*  This process is "triggered by the customer loyalty ID" at the point of sale.  *See* Birdzi Blog, Birdzi Integrates with NCR's Loyalty System to Improve Grocers' Personalization Efforts, *available at* http://birdzi.com/birdzi-integrates-with-ncrs-loyalty-system-to-improve-grocers-personalization-efforts/.  Furthermore, Birdzi has the ability to link a users' retailer loyalty card to its platform which allows Birdzi to associate the loyalty card account to available coupons.  *See* Birdzi Privacy Policy and App Terms of Use, *available at* https://birdzi.com/birdzi-privacy-policy-and-app-terms-of-use/.

60.     The Accused Products include "in response to determining that at least one valid coupon is associated with the unique account identifier in the database of accounts, transmitting, from the coupon processing server, an indication of the at least one valid coupon to the first point of sale terminal via the network, wherein the indication includes the at least one valid coupon[.]" *See* '133 Patent, Claim 1, at 12:5-12.  For example, after determining a coupon, associated with the unique account identifier, is valid, Birdzi transmits to the point-of-sale terminal an indication that the coupon is valid.  Shopper and basket information is sent "from ECRS's point-of-sale software, CATAPULT® Retail POS, [and is] relayed directly into Birdzi's Customer Intelligence Platform in real time, allowing for immediate and seamless execution of a shopper's personalized discounts and promotional offers at the POS." *See, e.g.,* Birdzi Blog, Harps Food Stores' Shoppers To Benefit

From Real-Time Savings at Checkout With Birdzi and ECRS, *available at* https://birdzi.com/harps-food-stores-shoppers-to-benefit-from-real-time-savings-at-checkout-with-birdzi-and-ecrs/; *see also* Birdzi Privacy Policy and App Terms of Use, *available at* https://birdzi.com/birdzi-privacy-policy-and-app-terms-of-use/; Personalization, *available at* https://birdzi.com/platform/personalization/; Birdzi Blog, Birdzi Integrates with NCR's Loyalty System to Improve Grocers' Personalization Efforts, *available at* http://birdzi.com/birdzi-integrates-with-ncrs-loyalty-system-to-improve-grocers-personalization-efforts/).  Coupons can be redeemed at checkout and the "purchases and club balances [are] reflected in their digital wallets in real time." *See, e.g.,* Birdzi Blog, Harps Food Stores' Shoppers To Benefit From Real-Time Savings at Checkout With Birdzi and ECRS, *available at* https://birdzi.com/harps-food-stores-shoppers-to-benefit-from-real-time-savings-at-checkout-with-birdzi-and-ecrs/.

61.    The Accused Products include "in response to receiving, at the coupon processing server from the first point of sale terminal, an indication of at least one redeemed coupon, updating the database of accounts."  *See* '133 Patent, Claim 1, at 12:12-15.  For example, Birdzi updates the customer database in response to receiving an indication from a point-of-sale (POS) terminal of at least one redeemed coupon. Birdzi's "Offer Performance Analytics" allows retailers to "track and assess the effectiveness of their digital campaigns" by providing real time data on customers' coupon "redemption rates, customer engagement, and overall campaign success."  *See* Birdzi Shopper Engagement Tools, *available at* https://birdzi.com/platform/shopper-engagement-tools/. Further, Birdzi's "Customer Data Platform" provides information to retailers about "shopper behaviors, preferences, and trends," indicating that the database of accounts is updated upon coupon redemption.  *Id.*; *see also* Birdzi Privacy Policy and App Terms of Use, *available at* https://birdzi.com/birdzi-privacy-policy-and-app-terms-of-use/; Personalization, *available at*

https://birdzi.com/platform/personalization/. Birdzi's DataScope also provides "Real-time insights"

into shopper behavior and reflects the update to the database of accounts.

62.     The Accused Products include "transmitting, from the coupon processing server to a

manufacturer associated with the at least one redeemed coupon, an indication that the at least one

redeemed coupon was redeemed against a purchased transaction, where the at least one redeemed

coupon is at least one of the at least one valid coupon." *See* '133 Patent, Claim 1, at 12:15-22.

Birdzi products transmit to its partners an indication that the at least one coupon was redeemed. For

example, the coupon information is transmitted and printed on the customer receipt and updated on

the mobile app:

> **Will any coupon information print on my grocery receipt?**
>
> Coupons that have been redeemed in your purchase will show at the bottom of
> your receipt, above the subtotal.

*See* my Hometown Rewards, *available at* https://www.myhometownrewards.com/. Birdzi also

provides daily data to its partners. Birdzi provides "self-serve capabilities," in which retailers (or

coupon providers) obtain "on-demand access" to Birdzi's platform to track individual purchases

and promotions validations. *See, e.g.*, Birdzi Shopper Engagement Tools, *available at*

https://birdzi.com/platform/shopper-engagement-tools/; Personalization, *available at*

https://birdzi.com/platform/personalization/. Birdzi lists the many forms of reporting and

analytics it performs:

# Out-Of-The-Box Reporting & Tools

**Birdzi's analytics platform is a powerhouse of tools and insights tailored to the grocery retail industry. Birdzi's out-of-the-box reporting & analytics include:**

- Customer Segmentation reports
- KIC score dashboard
- Customer segment behavior tracker
- Acquisition and retention metrics
- Lapsed Shopper and reactivation metrics
- Email Marketing Performance Dashboard
- Coupon Performance Analytics

*See* Shopper Analytics, *available at* https://birdzi.com/platform/shopper-analytics/. Birdzi's

DataScope also provides "Real-time insights" into shopper behavior and such tool would reflect

the indication that coupons were redeemed.

63.     In addition, Birdzi transmits data to manufacturers.  For example, Birdzi states that

"manufacturers got a glimpse into the performance of their campaigns across multiple stores

through Birdzi's analytics. This allowed them to launch more initiatives to grow their loyal

customer base and increase their sales."  Mobile-app Explainer Video, 1:21-1:32, available at

https://www.youtube.com/watch?v=ksgpySLVYEI.



*Id.* at 1:22.

64.    Birdzi literally or under the doctrine of equivalents infringes at least claim 1 of the '133 patent.

65.    Birdzi also indirectly infringes the '133 patent under 35 U.S.C. § 271(b) and (c) by actively inducing and contributing to the infringement by others.

66.    For example, Birdzi actively induces and has actively induced infringement of at least claim 1 of the '133 patent, literally or under the doctrine of equivalents, by making, manufacturing, testing and otherwise using, licensing, selling and offering to sell, and distributing Birdzi technologies described above for installation and/or use by customers, distributors, and end users whose installation and/or use directly infringe one or more claims of the '133 patent.   Birdzi encourages and instructs its customers and end users to obtain, install, configure, use, and activate the Accused Products, with knowledge that the induced acts constitute infringement.   For example, Birdzi has

been and is now intentionally instructing and directing its customers and end users of Birdzi's mobile applications that Birdzi will customize certain promotions, discounts and coupons to those who download and utilize the applications. *See, e.g.,* Welcome to my CountyMarket's Mobile Application Support Page, *available at* https://birdzi.com/mycountymarket_appsupport/; Supermarket News, Weis Markets engages more closely with customers, *available at* https://www.supermarketnews.com/grocery-marketing/weis-markets-engages-more-closely-with-customers. Birdzi also instructs and directs manufacturers and advertisers that the mobile applications can be used to engage, offer and influence consumers, to introduce new products, gain valuable consumer insights, and increase sales, all while benefitting from Birdzi's technology. *See, e.g.*, Personalization, *available at* https://birdzi.com/platform/personalization/, Shopper Engagement Tools, *available a*t https://birdzi.com/platform/shopper-engagement-tools/, Shopper Analytics, *available at* https://birdzi.com/platform/shopper-analytics/.

67.     Birdzi does and has done the above with knowledge of the patented invention of the '133 patent, and knowing that, by doing so, the customers, distributors, and end users directly infringe.  Birdzi possesses specific intent to encourage infringement by these entities and their customers. Birdzi has control over the design and use of the Birdzi products and services that incorporate the Accused Products described above, and Birdzi possesses specific intent to cause infringement by the use of these products and services as described in more detail above.  Birdzi has control over the end-user license terms and provisions thereof, which require and obligate customers, distributors, and end users to utilize the Accused Products in a manner that Birdzi knows is infringing.

68.     Birdzi also contributes and has contributed to the infringement of at least claim 1 of the '133 patent, literally or under the doctrine of equivalents, by making, manufacturing, testing and otherwise using, licensing, selling and offering to sell, and distributing Accused Products for

installation and/or use by customers, distributors, and end users whose installation and use directly infringe one or more claims of the '133 patent. Birdzi encourages and instructs its customers and end users to infringe, with knowledge that the induced acts constitute infringement. For example, Birdzi has been and is now intentionally requiring, instructing and directing end users of its products to install the Birdzi application, using push notifications to encourage use of the application, and inevitably use the infringing intelligent clearing network features of the Accused Products. *See, e.g., See* Welcome To My CountyMarket's Mobile Application Support Page, *available at* https://birdzi.com/mycountymarket_appsupport/.

69.    As a result of Birdzi's infringement of the '133 patent Inmar has suffered irreparable harm, including lost market opportunities, monetary damages which are difficult to calculate, and damage to its licensing program, and Inmar seeks recovery in an amount adequate to compensate for Birdzi's infringement, including a permanent injunction but in no event less than a reasonable royalty with interest and costs.

## SECOND COUNT
## DIRECT AND INDIRECT INFRINGEMENT OF U.S. PATENT NO. 9,098,855 UNDER 35 U.S.C. § 271(a), (b), and (c)

70.    Inmar incorporates by reference all of the prior allegations set forth in this Complaint as though fully set forth herein.

71.    Birdzi has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '855 patent (including without limitation claims 32, 34, 49, and 53) in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling, in this District and elsewhere in the United States, the Accused Products.

72.    The Accused Products infringe at least claims 32, 34, 49, and 53 of the '855 patent. For example, the Accused Products include "an intelligent clearing network (ICN) server" (the '855 Patent, Claim 53, at 32:56-57) comprising "an ICN database" (the '855 Patent, at 32:60). Birdzi

operates various "platforms" as part of its ICN.  For example, Birdzi's "Customer Intelligence Platform" "integrates analytics, shopper engagement, and personalization" into users' shopping experience by "[l]everaging advanced data analytics and machine learning."  In addition, Birdzi's ICN performs "Product Catalogue Management" that store information about their customers' products, "empower[ing] retailers with complete control over their [product] catalog" and allowing retailers to customize "images, categories, descriptions, and brand information." *See* Birdzi Blog, Birdzi Shopper Engagement Tools, *available at* https://birdzi.com/platform/shopper-engagement-tools/.  Birdzi's "Digital Coupon Platform" "allows retailers to create audiences, build offers, set budgets, and edit images," which can be "deep linked to mobile and web apps."  *Id.*  Further, Birdzi's "Offer Performance Analytics" allows retailers to "track and assess the effectiveness of their digital coupons."  *Id.*

73.    The Accused Products include a processor that "is configured to receive data elements through a network from a point-of-sale [POS] terminal of a retailer for validation and redemption" (the '855 Patent, Claim 53, at 32:58, 61-64) and further include "an interface configured to permit communications over a network to a plurality of POS terminals" (the '855 Patent, Claim 53, at 32:58-59).  For example, Birdzi's ICN server comprises an interface, such as an API interface, configured to permit communications over a network to a plurality of POS terminals, such as to communicate with POS terminals in retail stores.  Using Birdzi's API integration with ECRS, a point-of-sale solutions provider, "enables [Birdzi's] customers to redeem digital coupons, loyalty rewards and Birdzi's hyper-personalized VISPER offers in real time as they shop….With this latest integration, shopper and basket information from ECRS's point-of-sale software, CATAPULT® Retail POS, is relayed directly into Birdzi's Customer Intelligence Platform in real time, allowing for immediate and seamless execution of a shopper's personalized

discounts and promotional offers at the POS." *See* Birdzi Blog, "Harps Food Stores' Shoppers To Benefit From Real-Time Savings at Checkout With Birdzi and ECRS," *available at* https://birdzi.com/harps-food-stores-shoppers-to-benefit-from-real-time-savings-at-checkout-with-birdzi-and-ecrs/; *see also* Partners and Integrations Overview, *available at* https://birdzi.com/company/partners-integrations/; Birdzi Shopper Engagement Tools, *available at* https://birdzi.com/platform/shopper-engagement-tools/. In addition, the ICN server receives requests through a network from a retailer for validation and redemption of personalized coupons and promotional offers. For example, "shopper and basket information" from the ECRS point-of-sale software is sent to Birdzi's Customer Intelligence Platform for validation and redemption. *See* Birdzi Blog, Harps Food Stores' Shoppers To Benefit From Real-Time Savings at Checkout With Birdzi and ECRS, *available at* https://birdzi.com/harps-food-stores-shoppers-to-benefit-from-real-time-savings-at-checkout-with-birdzi-and-ecrs/.

74. The Accused Products include a processor that is configured to receive "data elements including product code information of an item to be purchased at the POS terminal and a promotion request message, where the promotion request message is scanned at the POS terminal located at a retail store[.]" *See* '855 Patent, Claim 53, at 32:64-33:1. For example, as described above, the ICN receives a promotion request message through various APIs. When a coupon request is sent to the ICN for coupon activation, the request includes product code information, such as a universal product code (UPC). *See, e.g.,* Birdzi Blog, Harps Food Stores' Shoppers To Benefit From Real-Time Savings at Checkout With Birdzi and ECRS, *available at* https://birdzi.com/harps-food-stores-shoppers-to-benefit-from-real-time-savings-at-checkout-with-birdzi-and-ecrs/. Birdzi processes data scanned by the retailer at the POS terminal, to verify whether the product qualifies for a promotion. The data elements used by Birdzi for validation and

redemption include coupon code information which may include the UPC of the barcode information from a scanned product to be purchased (e.g., basket information). *See, e.g.*, Birdzi Blog, Harps Food Stores' Shoppers To Benefit From Real-Time Savings at Checkout With Birdzi and ECRS, *available at* https://birdzi.com/harps-food-stores-shoppers-to-benefit-from-real-time-savings-at-checkout-with-birdzi-and-ecrs/.

75.    The Accused Products include an ICN server "at a location that is remote from the retail store[.]"  *See* '855 Patent, Claim 53, at 32:66-33:1.  For example, Birdzi's website states, "Our servers and data centers are located in the United States….[W]e may transfer your data from the U.S. to other countries or regions in connection with storage and processing of data, fulfilling your requests, and operating the Services," indicating the servers are operated by Birdzi and not on-site at the retailer.  *See* Birdzi Privacy Policy and App Terms of Use, *available at* https://birdzi.com/birdzi-privacy-policy-and-app-terms-of-use/.  Further, Birdzi states that the personalized offers are delivered at the point of sale "via a real time call to Birdzi's platform," further indicating that the server is remote from the retail store.  *See* Birdzi Blog, Birdzi Integrates with NCR's Loyalty System to Improve Grocers' Personalization Efforts, *available at* http://birdzi.com/birdzi-integrates-with-ncrs-loyalty-system-to-improve-grocers-personalization-efforts/.

76.    The Accused Products include the ICN server used "to validate the promotion request message based at least in part on the product code information, and, in response to validating the data elements at the ICN server, to send a promotion request response message that indicates whether the promotion request message has been validated."  *See* '855 Patent, Claim 53, at 33:1-8.  Birdzi's ICN server is configured to validate the coupon based at least in part on the product code information.  For example, "shopper and basket information" (which includes the

claimed "product code information") is sent from ECRS's point-of-sale software to Birdzi's

Customer Intelligence Platform which "allow[s] for…execution of a shopper's personalized

discounts and promotional offers at the POS." *See* Birdzi Blog, Harps Food Stores' Shoppers To

Benefit From Real-Time Savings at Checkout With Birdzi and ECRS, *available at*

https://birdzi.com/harps-food-stores-shoppers-to-benefit-from-real-time-savings-at-checkout-with-

birdzi-and-ecrs/.  In addition, Birdzi's ICN server sends a response message indicating whether the

promotion request message has been validated.  For example, Birdzi's Customer Engagement

Platform includes Offer Performance Analytics, through which partners can track and assess the

effectiveness of their digital coupons by providing real time data and metrics such as redemption

rates, customer engagement, and overall campaign success.  *See, e.g. id.*

77.    Birdzi literally or under the doctrine of equivalents infringes at least claims 32, 34, 49,

and 53 of the '855 patent.

78.    Birdzi also indirectly infringes the '855 patent under 35 U.S.C. § 271(b) and (c) by

actively inducing and contributing to the infringement by others.

79.    For example, Birdzi actively induces and has actively induced infringement of at

least claim 53 of the '855 patent, literally or under the doctrine of equivalents, by making,

manufacturing, testing and otherwise using, licensing, selling and offering to sell, and distributing

Birdzi technologies described above for installation and/or use by customers, distributors, and end

users whose installation and/or use directly infringe one or more claims of the '855 patent.  Birdzi

encourages and instructs its customers and end users to obtain, install, configure, use, and activate

the Accused Products, with knowledge that the induced acts constitute infringement.  For example,

Birdzi has been and is now intentionally instructing and directing its customers and end users of

Birdzi's mobile applications that Birdzi will customize certain promotions, discounts and coupons

to those who download and utilize the applications. *See, e.g.*, Welcome to my CountyMarket's Mobile Application Support Page, *available at* https://birdzi.com/mycountymarket_appsupport/; Weis Markets engages more closely with customers, available at https://www.supermarketnews.com/grocery-marketing/weis-markets-engages-more-closely-with-customers. Birdzi also instructs and directs manufacturers and advertisers that the mobile applications can be used to engage, offer and influence consumers, to introduce new products, gain valuable consumer insights, and increase sales, all while benefitting from Birdzi's technology. *See, e.g.*, Personalization, *available at* https://birdzi.com/platform/personalization/, Shopper Engagement Tools, *available at* https://birdzi.com/platform/shopper-engagement-tools/, Shopper Analytics, *available at* https://birdzi.com/platform/shopper-analytics/.

80.     Birdzi does and has done the above with knowledge of the patented invention of the '855 patent, and knowing that, by doing so, the customers, distributors, and end users directly infringe. Birdzi possesses specific intent to encourage infringement by these entities and their customers. Birdzi has control over the design and use of the Birdzi products and services that incorporate the Accused Products described above, and Birdzi possesses specific intent to cause infringement by the use of these products and services as described in more detail above. Birdzi has control over the end-user license terms and provisions thereof, which require and obligate customers, distributors, and end users to utilize the Accused Products in a manner that Birdzi knows is infringing.

81.     Birdzi also contributes and has contributed to the infringement of at least claim 53 of the '855 patent, literally or under the doctrine of equivalents, by making, manufacturing, testing and otherwise using, licensing, selling and offering to sell, and distributing Accused Products for installation and/or use by customers, distributors, and end users whose installation and use directly infringe one or more claims of the '855 patent. Birdzi encourages and instructs its customers and end

users to infringe, with knowledge that the induced acts constitute infringement. For example, Birdzi has been and is now intentionally requiring, instructing and directing end users of its products to install the Birdzi application, using push notifications to encourage use of the application, and inevitably use the infringing intelligent clearing network features of the Accused Products. *See, e.g., See* Welcome To My CountyMarket's Mobile Application Support Page, *available at* https://birdzi.com/mycountymarket_appsupport/.

82. As a result of Birdzi's infringement of the '855 patent Inmar has suffered irreparable harm, including lost market opportunities, monetary damages which are difficult to calculate, and damage to its licensing program, and Inmar seeks recovery in an amount adequate to compensate for Birdzi's infringement, including a permanent injunction but in no event less than a reasonable royalty with interest and costs.

## THIRD COUNT
## DIRECT AND INDIRECT INFRINGEMENT OF U.S. PATENT NO. 10,846,729 UNDER 35 U.S.C. § 271(a), (b) and (c)

83. Inmar incorporates by reference all of the prior allegations set forth in this Complaint as though fully set forth herein.

84. Birdzi has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '729 patent (including without limitation claim 10) in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling, in this District and elsewhere in the United States, the Accused Products.

85. The Accused Products infringe at least claim 10 of the '729 patent. For example, the Accused Products integrate customer analytics, shopper engagement, and personalization to optimize and automate targeted marketing campaigns, which include "[a]n ICN server comprising a processor; and a memory including computer program code, the memory and the computer program code configured to, with the processor" (the '729 Patent, Claim 10, at 53:41-44). For example, Birdzi

operates various "platforms" as part of its ICN.  For example, Birdzi's "Customer Intelligence Platform" "integrates analytics, shopper engagement, and personalization" into users' shopping experience by "[l]everaging advanced data analytics and machine learning."  In addition, Birdzi's ICN performs "Product Catalogue Management" that store information about their customers' products, "empower[ing] retailers with complete control over their [product] catalog" and allowing retailers to customize "images, categories, descriptions, and brand information." *See* Birdzi Shopper Engagement Tools, *available at* https://birdzi.com/platform/shopper-engagement-tools/.  Birdzi's "Digital Coupon Platform" "allows retailers to create audiences, build offers, set budgets, and edit images," which can be "deep linked to mobile and web apps." *Id.*  Further, Birdzi's "Offer Performance Analytics" allows retailers to "track and assess the effectiveness of their digital coupons." *Id.*  Birdzi's ICN server requires "a processor" and "a memory including computer program code" to function.

86.    The Accused Products include computer program code configured to cause the ICN server to "receive, at an ICN server, first coupon or incentive information, including universal product code information of an item to be purchased at a retail business, the first coupon or incentive related information having been input to a terminal in the retail business, the ICN server being at a location that is remote from the retail business[.]" *See* '729 Patent, Claim 10, at 53:45-51.  As described in more detail below, Birdzi application users can "clip[] digital offers, purchas[e] eligible items for [users'] clipped offers at a participating location, and…scan[] the barcode on the home screen in the app."  The application's coupons "will apply to purchase automatically." *See* my Hometown Rewards, *available at* https://www.myhometownrewards.com/.

87.    For example, Birdzi users can type or scan any item they want to purchase in the Birdzi app to add it to their shopping list.

Simply type the item you are looking for anywhere there is a search box. You can also click the scan button to scan any UPC to add it to your list.



*See* Welcome To My CountyMarket's Mobile Application Support Page, *available at* https://birdzi.com/mycountymarket_appsupport/.

88.     Birdzi's recommended coupons appear on the screen or the coupons tab where users can "clip" the coupons.

We've made saving easier! View recommended coupons right on your home screen or click the coupons icon to see all available coupons.



*See* Welcome To My CountyMarket's Mobile Application Support Page, *available at* https://birdzi.com/mycountymarket_appsupport/.

89.     Clipping the coupons adds them to the coupon list:

To take advantage of savings simply clip the coupon
and it will be added to your list.



*See* Welcome To My CountyMarket's Mobile Application Support Page, *available at* https://birdzi.com/mycountymarket_appsupport/.

90.     Clipped coupons can be viewed in the "clipped coupons" tab:

To see your clipped coupons, click on the shopping list
icon and go to the "clipped coupons" tab.



*See* Welcome To My CountyMarket's Mobile Application Support Page, *available at* https://birdzi.com/mycountymarket_appsupport/.

91.     Coupons are redeemed by scanning the barcode on the home screen:

Redeem coupons at checkout by scanning the
barcode on your home screen.



*See* Welcome To My CountyMarket's Mobile Application Support Page, *available at* https://birdzi.com/mycountymarket_appsupport/.

92.    Birdzi uses universal product code (UPC) information to match data and to retrieve real-time, personalized offers.  For example, when a coupon request is sent to the ICN for coupon activation, the request includes product code information as well as a customer loyalty ID.

> **How do I know if an item is included in a digital coupon?**
>
> Tap on any coupon and scroll up to see items that qualify for that coupon. You can also use the "Confirm Sale Item" button at the top of each coupon. Simply tap the button and scan the product's UPC. The app will tell you if the item is a match for that coupon.

*See* my Hometown Rewards*, available at* https://www.myhometownrewards.com/.  The "Confirm Sale Item" button described above for scanning UPC is shown in the dotted purple box in the annotated figure below:

To take advantage of savings simply clip the coupon
and it will be added to your list.



*See* Welcome To My CountyMarket's Mobile Application Support Page, *available at* https://birdzi.com/mycountymarket_appsupport/.

93.    Birdzi's ICN server is at a location that is remote from the retail business.  For example, Birdzi's website states, "Our servers and data centers are located in the United States….[W]e may transfer your data from the U.S. to other countries or regions in connection with storage and processing of data, fulfilling your requests, and operating the Services," indicating the servers are operated by Birdzi and not on-site at the retailer.  *See* Birdzi Privacy Policy and App Terms of Use, *available at* https://birdzi.com/birdzi-privacy-policy-and-app-terms-of-use/.  Further, Birdzi states that the personalized offers are delivered at the point of sale "via a real time call to Birdzi's platform," further indicating that the server is remote from the retail store.  *See* Birdzi Blog, Birdzi Integrates with NCR's Loyalty System to Improve Grocers' Personalization Efforts, *available at* http://birdzi.com/birdzi-integrates-with-ncrs-loyalty-system-to-improve-grocers-personalization-efforts/.

94.    The Accused Products include computer program code configured to cause the ICN server "to validate, at the ICN server, the first coupon or incentive related information by performing

a comparison of the first coupon or incentive related information based at least in part on the universal product code information[.]"  *See* '729 Patent, Claim 10, 53:52-55.  Birdzi's application validates coupon or incentive related information. For example, to determine whether an item is included in a digital coupon, the user can tap the coupon to view eligible coupons.  Alternatively, the user can tap a "Confirm Sale Item" button to scan the product's UPC.  The coupon request is sent from a retailer to the ICN for validation.  Then, "the app will tell you if the item is a match for that coupon."  *See* my Hometown Rewards, *available at* https://www.myhometownrewards.com/.   For example, as pictured below, coupons can be clipped. Then "shopper and basket information…is relayed directly into Birdzi's Customer Intelligence Platform in real time, allowing for immediate and seamless execution of a shopper's personalized discounts and promotional offers at the POS."  *See* Birdzi Blog, Harps Food Stores' Shoppers To Benefit From Real-Time Savings at Checkout With Birdzi and ECRS,  *available   at*   https://birdzi.com/harps-food-stores-shoppers-to-benefit-from-real-time-savings-at-checkout-with-birdzi-and-ecrs/.



*See* Welcome To My CountyMarket's Mobile Application Support Page, *available at* https://birdzi.com/mycountymarket_appsupport/.

95.     The Accused Products include computer program code configured to cause the ICN server "to transmit from the ICN server, in response to validation of the first coupon or incentive related information, coupon or incentive codes triggered by the validation of the first coupon or incentive related information, the coupon or incentive codes triggered being useable by the terminal to redeem the first coupon or incentive information[.]" *See* '729 Patent, Claim 10, at 53:56-62.  Birdzi sends to the POS codes or other information to enable application of the discount. For example, "shopper and basket information…is relayed directly into Birdzi's Customer Intelligence Platform in real time, allowing for immediate and seamless execution of a shopper's personalized discounts and promotional offers at the POS." *See* Birdzi Blog, Harps Food Stores' Shoppers To Benefit From Real-Time Savings at Checkout With Birdzi and ECRS, *available at* https://birdzi.com/harps-food-stores-shoppers-to-benefit-from-real-time-savings-at-checkout-with-birdzi-and-ecrs/.

96.     The Accused Products include computer program code configured to cause the ICN server "to receive, at the ICN server from a retail server located in a retail business located at a first location, redeemed coupon related information indicating successful redemption of a coupon, wherein the redeemed coupon related information comprises identification information from a product purchased, customer identification information, an application identifier, and retailer identification information and where the ICN server is at a second location that is remote from the first location; in response to receiving the redeemed coupon related information, to determine whether the redemption of the coupon was valid based on the redeemed coupon related information [.]" *See* '729 Patent, Claim 10, at 53:63-54:8.  For example, coupons are redeemed by scanning the barcode on the home screen at the point of sale terminal, which transmits information from the barcode to Birdzi's off-site ICN server.

-44-

Redeem coupons at checkout by scanning the barcode on your home screen.



*See* Welcome To My CountyMarket's Mobile Application Support Page, *available at* https://birdzi.com/mycountymarket_appsupport/. For example, in Harps grocery stores, Birdzi's collaboration with ECRS (a provider of retail point-of-sale systems) allows "shopper and basket information from ECRS's point-of-sale software, CATAPULT® Retail POS, [to be] relayed directly into Birdzi's Customer Intelligence Platform in real time, allowing for immediate and seamless execution of a shopper's personalized discounts and promotional offers at the POS." *See* Birdzi Blog, Harps Food Stores' Shoppers To Benefit From Real-Time Savings at Checkout With Birdzi and ECRS, *available at* https://birdzi.com/harps-food-stores-shoppers-to-benefit-from-real-time-savings-at-checkout-with-birdzi-and-ecrs/. Birdzi users can "redeem their personalized digital coupons and loyalty offers seamlessly at checkout and see their purchases and club balances reflected in their digital wallets in real time." *Id.* Communication occurs between the POS and Birdzi that would indicate once the transaction is complete and the coupons were redeemed so that Birdzi can collect customer data in its Analytics tools, including the DataScope product and "Customer Data Platform" including data on "shopper behaviors, preferences, and trends." *See* Shopper Engagement Tools, *available at* https://birdzi.com/platform/shopper-engagement-tools/. This data can include

"metrics such as redemption rates, customer engagement, and overall campaign success." *Id.* In fact, Birdzi collects and processes "dozens or hundreds of attributes maintained for each product being sold." *See* Supermarket News, Customer Intelligence as a Service, available at https://www.supermarketnews.com/grocery-technology/customer-intelligence-as-a-service. Birdzi further describes that its retailers "must capture not only what shoppers purchase but also when, where, how often, and the price paid and discounts received, in order to develop a complete view of the customer journey" and "purchase history, digital engagement, and demographic data are integrated" https://birdzi.com/wp-content/uploads/2025/11/Disrupting-how-Grocery-Retail-goes-to-Market-6.pdf Birdzi also collects customer identification information during the account registration process and such information is included in the transaction. For example, Birdzi's Privacy Policy and App Terms of Use states, "We will collect the Personal Information that you provide to us in the course of registering for an account or the information that you have provided to Retailer if you link your Retailer account to the Service (with the Savings Card Scanning Feature, below). *See also* Birdzi Privacy Policy and App Terms of Use, *available at* https://birdzi.com/birdzi-privacy-policy-and-app-terms-of-use/.

97.     The Accused Products include computer program code configured to cause the ICN server "to store, by the ICN server, the redeemed coupon related information in a redeemed coupon database, where the redeemed coupon database comprises a plurality of redeemed coupon related information received from a plurality of retailer servers." *See* '729 Patent, Claim 10, at 54:9-14. For example, after receiving an indication that at least one coupon is redeemed, Birdzi stores coupon redemption information in its Analytics tools, for example, its DataScope Platform, or "Customer Data Platform," a "comprehensive tool [that] aggregates and analyzes customer data from various sources…provid[ing] retailers with valuable insights into shopper behaviors,

preferences, and trends…"  *See* Shopper Engagement Tools, *available at*

https://birdzi.com/platform/shopper-engagement-tools/.  Birdzi's "Customer Intelligence Platform"

provides insight into customer behavior by "ingest[ing] transaction data (batch or real-time) and

automatically creat[ing] hundreds of unique attributes for each individual shopper, updated with

every product purchased." *See* Supermarket News, Customer Intelligence as a Service, *available at*

https://www.supermarketnews.com/grocery-technology/customer-intelligence-as-a-service.  Birdzi

captures "dozens or hundreds of attributes" for each product sale, including, but not limited to UPC,

product name, ingredients and nutritional information.  *Id.*  In addition, Birdzi performs "Offer

Performance Analytics" based on information collected by the ICN – for example, this platform

"provides real time, details, data and insights on metrics such as redemption rates, customer

engagement, and overall campaign success…"  *Id.*

98.    Birdzi also indirectly infringes the '729 patent under 35 U.S.C. § 271(b) and (c) by

actively inducing and contributing to the infringement by others.

99.    For example, Birdzi actively induces and has actively induced infringement of at

least claim 10 of the '729 patent, literally or under the doctrine of equivalents, by making,

manufacturing, testing and otherwise using, licensing, selling and offering to sell, and distributing

Birdzi technologies described above for installation and/or use by customers, distributors, and end

users whose installation and/or use directly infringe one or more claims of the '729 patent.  Birdzi

encourages and instructs its customers and end users to obtain, install, configure, use, and activate

the Accused Products, with knowledge that the induced acts constitute infringement.  For example,

Birdzi has been and is now intentionally instructing and directing its customers and end users of

Birdzi's mobile applications that Birdzi will customize certain promotions, discounts and coupons

to those who download and utilize the applications.  *See, e.g.,* Welcome to my CountyMarket's

Mobile Application Support Page, *available at* https://birdzi.com/mycountymarket_appsupport/;

Weis Markets engages more closely with customers, *available at*

https://www.supermarketnews.com/grocery-marketing/weis-markets-engages-more-closely-with-customers.  Birdzi also instructs and directs manufacturers and advertisers that the mobile

applications can be used to engage, offer and influence consumers, to introduce new products, gain

valuable consumer insights, and increase sales, all while benefitting from Birdzi's technology.  *See,*

*e.g*., Personalization, *available at* https://birdzi.com/platform/personalization/, Shopper

Engagement Tools, *available a*t https://birdzi.com/platform/shopper-engagement-tools/, Shopper

Analytics, *available at* https://birdzi.com/platform/shopper-analytics/.

100.    Birdzi does and has done the above with knowledge of the patented invention of the

'729 patent, and knowing that, by doing so, the customers, distributors, and end users directly

infringe.  Birdzi possesses specific intent to encourage infringement by these entities and their

customers. Birdzi has control over the design and use of the Birdzi products and services that

incorporate the Accused Products described above, and Birdzi possesses specific intent to cause

infringement by the use of these products and services as described in more detail above.  Birdzi has

control over the end-user license terms and provisions thereof, which require and obligate customers,

distributors, and end users to utilize the Accused Products in a manner that Birdzi knows is infringing.

101.    Birdzi literally or under the doctrine of equivalents infringes at least claim 10 of the

'729 patent.

102.    Birdzi also contributes and has contributed to the infringement of at least claim 10 of

the '729 patent, literally or under the doctrine of equivalents, by making, manufacturing, testing and

otherwise using, licensing, selling and offering to sell, and distributing Accused Products for

installation and/or use by customers, distributors, and end users whose installation and use directly

infringe one or more claims of the '729 patent. Birdzi encourages and instructs its customers and end users to infringe, with knowledge that the induced acts constitute infringement. For example, Birdzi has been and is now intentionally requiring, instructing and directing end users of its products to install the Birdzi application, using push notifications to encourage use of the application, and inevitably use the infringing intelligent clearing network features of the Accused Products. *See, e.g., See* Welcome To My CountyMarket's Mobile Application Support Page, *available at* https://birdzi.com/mycountymarket_appsupport/.

103.    As a result of Birdzi's infringement of the '729 patent Inmar has suffered irreparable harm, including lost market opportunities, monetary damages which are difficult to calculate, and damage to its licensing program, and Inmar seeks recovery in an amount adequate to compensate for Birdzi's infringement, including a permanent injunction but in no event less than a reasonable royalty with interest and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Inmar prays for judgment and seeks relief against Birdzi as follows:

A.    For judgment that Birdzi has infringed one or more claims of the Patents-in-Suit, directly, and/or indirectly by way of inducement or contributory infringement, either literally or under the doctrine of equivalents, and/or continues to infringe one or more claims of the Asserted Patents;

B.    For an accounting of damages sustained by Inmar as the result of Birdzi's acts of infringement;

C.    For judgment awarding Inmar damages adequate to compensate it for Birdzi's infringement of the Patents-in-Suit, including all pre-judgment and post-judgment interest;

D.    For mandatory future royalty payable on each and every future sale by Birdzi or infringing use of the Asserted Patents and on any products or services reasonably similar to those found to infringe;

E.    For a permanent injunction against Birdzi and its respective officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement of the Asserted Patents;

F.    For judgment that Birdzi has willfully infringed one or more claims of the Patents-in-Suit;

G.    For judgment awarding enhanced damages pursuant to 35 U.S.C. § 284;

H.    For judgment awarding attorneys' fees pursuant to 35 U.S.C. § 285 or otherwise permitted by law;

I.    For judgment awarding costs of suit; and

J.    For judgment awarding Inmar such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure Inmar hereby demands a trial by jury of this action.

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

_____

John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Of counsel*:

Denise M. De Mory
Robin Curtis
Abigail Lublow
BUNSOW DE MORY LLP
701 El Camino Real
Redwood City, CA 94063
(650) 351-7248
ddemory@bdiplaw.com
rcurtis@bdiplaw.com
alublow@bidplaw.com

*Attorneys for Plaintiff*

Dated:  January 16, 2026